STEVEN W. MYHRE
Acting United States Attorney
Nevada Bar No. 9635
BRANDON C. JAROCH
Assistant United States Attorney
District of Nevada
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
brandon.jaroch@usdoj.gov

Attorney for the United States

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ANTONIO YBANEZ, and<br>JENNIFER HAMOY,<br><br>　　　　Defendants. | CRIMINAL INDICTMENT<br><br>Case No.: 2:17-cr-401<br><br>Violation(s):<br>18 U.S.C. § 371 and 8 U.S.C. §1325(c) –<br>Conspiracy to Commit Marriage Fraud |

THE GRAND JURY CHARGES THAT:

A. <u>INTRODUCTORY ALLEGATIONS</u>

At all times relevant to this Indictment:

1.　For an alien to obtain permanent resident status, commonly known as a "green card," on the basis of marriage to a United States citizen, two separate applications had to be filed with U.S. Citizenship and Immigration Services (CIS), which was the government agency that adjudicated immigration-related

applications, including applications for visas and applications for citizenship. The United States citizen spouse were required to file a Petition for Alien Relative (Form I-130), commonly known as a "visa petition," on behalf of the alien spouse. Either simultaneously or sometime thereafter, the alien spouse was required to file an Application to Register Permanent or Adjust Status (Form I-485), commonly known as an "application for adjustment of status."

2. An I-130 visa petition was a document that required the citizen spouse to provide, among other things, the marital address. In signing the document, the citizen spouse was required to certify under oath that the information in the petition was true and correct.

3. An application for adjustment of status was a document that required an alien spouse to provide biographical information, including the alien's address. The application also contained a series of questions addressing various bases by which an application could be denied. For example, these questions included whether an alien had engaged in any criminal activity. These questions also included whether the alien had ever sought to procure a visa by fraud or willful misrepresentation of a material fact, which included attempts to procure permanent resident status through fraud. With his or her signature, an alien spouse certified under penalty of perjury that all the information in the application for adjustment of status was true and correct.

4. Typically, CIS conducts one or more interviews of the spouses prior to a decision on the visa petition and adjustment of status application. Both spouses are

placed under oath before any interview was conducted. CIS specifically conducts interviews to determine whether a particular marriage is valid.

## COUNT ONE
### (Conspiracy to Commit Marriage Fraud)

5. The Grand Jury repeats, re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 4 of this Indictment as if set forth herein.

B. <u>THE OBJECT OF THE CONSPIRACY</u>

6. Beginning on or about December 10, 2013, and continuing to on or about July 10, 2015, within the District of Nevada, and elsewhere, defendants ANTONIO YBANEZ, and JENNIFER HAMOY, also known as "Tony" and "Jenny," ("defendants"), together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offenses against the United States:

a. To knowingly and unlawfully assist others to enter into marriage for the purpose of evading a provision of the immigration laws of the United States, without intending to establish a life together as husband and wife, in violation of Title 8, United States Code, Section 1325(c); and

b. To knowingly present an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, under oath and under penalty of perjury, knowing that it contained a false statement with respect to a material fact and failed to contain any reasonable basis in law and fact, in violation of Title 18, United States Code, Section 1546(a).

C. <u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

7. The objects of the conspiracies were carried out, and to be carried out, in substance, as follows:

a. The defendants arranged a sham marriage for the individuals listed below so that the noncitizen immigrant could obtain permanent resident status through a marriage to a United States citizen. The defendants instructed the couple on how to make the marriage appear genuine by opening joint bank accounts, filing joint tax returns, obtaining driver's licenses with the same address, and taking photographs of themselves.

b. The defendants would also provide paralegal services for the couple. Through this service, the couple would file visa petitions and applications for adjustment of status containing false statements with CIS.

c. The defendants would also instruct the individuals to lie to law enforcement agents to conceal the true nature of the marriages in question.

D. <u>OVERT ACTS – MARRIAGE of M.V. and S.J.</u>

In furtherance of the conspiracy, and to accomplish its objects, on or about the following dates, defendants and others known and unknown to the Grand Jury, committed various overt acts, within the District of Nevada, and elsewhere, including but not limited to, the following:

<u>Overt Act No. 1</u>: On or about December 10, 2013, YBANEZ met with M.V., a citizen of the Philippines, to discuss entering in into a sham marriage with D.P., a United States citizen, for the purposes of immigration benefits. The parties met at

1  a coffee shop in Las Vegas, NV, and they discussed the details of M.V. entering a
2  fraudulent marriage in exchange for a total of $18,000 to be paid to YBANEZ at
3  intervals throughout the process.
4      Overt Act No. 2: On or about January 14, 2014, YBANEZ met with M.V. to
5  discuss entering into a sham marriage with E.H., a United States citizen, for the
6  purpose of immigration benefits. The parties met at a coffee shop in Las Vegas, NV
7  where YBANEZ stated that they would use a paralegal named "Jenny," later
8  identified as HAMOY, to handle the immigration paperwork because she would be
9  cheaper than an attorney. YBANEZ initially prevented M.V. and E.H. from
10 exchanging phone numbers for fear the parties would enter a marriage without
11 YBANEZ's assistance but eventually relented.
12     Overt Act No. 3: On or about March 10, 2014, M.V. called YBANEZ to let
13 him know that he/she was not comfortable with E.H. as his/her potential spouse.
14 M.V. indicated to YBANEZ that he/she had found a co-worker, S.J., that would be
15 willing to assist in the sham marriage. YBANEZ agreed and indicated he would act
16 as a neutral party for the sham marriage but indicated that he would need to meet
17 with S.J. face-to-face.
18     Overt Act No. 4: On or about April 4, 2014, YBANEZ met with M.V. and S.J.
19 for the purposes of entering into a sham marriage. The parties met at a fast-food
20 restaurant in Las Vegas, NV where YBANEZ inquired as to S.J.'s marriage status,
21 income, filing of income tax returns, and whether he/she had any trouble with the
22 law. YBANEZ also described the income thresholds needed for a successful sham
23

marriage. YBANEZ explained the entire sham marriage procedure, the fee schedules, and the use of HAMOY as the paralegal to assist with the immigration documents to keep costs low.

<u>Overt Act No. 5</u>: On or about April 18, 2014, YBANEZ called M.V. and told M.V. that he/she needed to get a driver's license in order for M.V. to be eligible for a marriage license.

<u>Overt Act No. 6</u>: On or about April 30, 2014, S.J. called YBANEZ to inquire about which wedding chapel they would use for the sham marriage. YBANEZ stated that they would use the "Heavenly Bliss" wedding chapel in Las Vegas, NV and that YBANEZ would be present throughout the marriage ceremony.

<u>Overt Act No. 7</u>: On or about May 19, 2014, after securing what on its face appeared to be a valid marriage license, YBANEZ had M.V., S.J., and other law enforcement officers acting in an undercover capacity, follow him to the "Stained Glass Chapel," located at 721 S. Casino Center Blvd., Las Vegas, NV, for the purpose of entering into the sham marriage. After the ceremony, YBANEZ provided M.V. and S.J. with a six-page questionnaire to prepare them for the immigration interview regarding the legitimacy of their marriage. YBANEZ accompanied M.V. and S.J. to the wedding reception at a local casino. YBANEZ also propositioned R.G., a law enforcement officer acting in an undercover capacity, to enter into a sham marriage because he was a United States citizen.

<u>Overt Act No. 8</u>: On or about October 29, 2014, YBANEZ met with M.V. and S.J., at a coffee shop located in Las Vegas, NV to prepare for their meeting at

6

HAMOY's office. YBANEZ stated that HAMOY had been handling all of the necessary immigration paperwork for his clients and that she was aware of the fraudulent nature of the marriage. Later that same day, YBANEZ, M.V., and S.J. met with HAMOY at her office located at 953 E. Sahara Ave., Unit F20, Las Vegas, NV. HAMOY then instructed M.V. to take photos and other steps to make the marriage appear to be legitimate including having all of M.V.'s mail go to S.J.'s residence. HAMOY also listed the documents needed for the application including a medical examination and vaccination records. HAMOY instructed M.V. to meet in public locations to get to know each other and provided them with an additional questionnaire to prepare for their immigration interview. HAMOY stated that they cannot remarry anyone else for two years to allow M.V. to get past his/her conditional residence status but would be able to assist with their divorce at the appropriate time.

    <u>Overt Act No. 9</u>: On or about October 31, 2014, S.J. met with HAMOY at a gas station in Las Vegas, NV to provide her with the fees associated with the immigration documents.

    <u>Overt Act No. 10</u>: On or about November 14, 2014, HAMOY met with S.J. at her office in Las Vegas, NV to sign immigration paperwork and indicated that S.J. should send HAMOY any paperwork he/she received from the United States Citizenship and Immigration Services (USCIS).

    <u>Overt Act No. 11</u>: On or about December 4, 2014, HAMOY mailed the completed immigration documents from Las Vegas, NV detailing the sham

7

marriage to USCIS. HAMOY sent a text message to S.J. showing the US postal Service certified mail receipt.

<u>Overt Act No. 12</u>: On or about April 8, 2015, S.J. called HAMOY to discuss a meeting before the immigration interview scheduled for April 22, 2015.

<u>Overt Act No. 13</u>: On or about April 15, 2015, HAMOY met with S.J. and M.V. at a coffee shop in Las Vegas, NV to prepare them for their immigration interview. HAMOY asked S.J. whether he/she and M.V. had prepared joint tax returns and told S.J. to have M.V. look organized at their interview and have all of the paperwork in a folder with plastic dividers. HAMOY provided copies of the documents she filed with USCIS to S.J. HAMOY told S.J. to memorize the biographical information contained in the immigration documents and to bring photos of S.J. with M.V.

<u>Overt Act No. 14</u>: On or about June 5, 2015, S.J. called HAMOY to inform her that they did not pass their immigration interview and were issued a notice that their immigration benefit petition would be denied unless further information was received. HAMOY appeared to be surprised and asked to review a copy of the letter.

<u>Overt Act No. 15</u>: On or about June 10, 2015, S.J. met with HAMOY at her office to discuss the denial letter. HAMOY suggested that they seek out the assistance of an attorney if S.J. and M.V. wanted to proceed with the application. HAMOY told S.J. not to tell the attorney the marriage was fraudulent so the

attorney would work with them. HAMOY had S.J. follow her out of the office and pointed to an attorney's office across the street.

All in violation of Title 18, United States Code, Section 371 and Title 8, United States Code, Section 1325(c).

**DATED:** this 20th day of December, 2017.

**A TRUE BILL:**

/S/
FOREPERSON OF THE GRAND JURY

STEVEN W. MYHRE
Acting United States Attorney

BRANDON C. JAROCH
Assistant United States Attorney